**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

CASSONDRA CASORIO-SAHIN          :
414 Windward Court
Elkton, MD  21921,                              :

ANDRES QUINTANA                         :
5 Maple Court
Elkton, MD  21921,                              :

     and                                          :          Case No. 18-00851

JONATHAN THOMAS                        :
25 Montague Road
Newark, DE  19713,                           :

as individuals and on behalf of all others   :
similarly situated,                               :

        Plaintiffs,                     :

     v.                                            :          **CLASS AND COLLECTIVE**
                                                         **ACTION COMPLAINT**
PAT'S SELECT PIZZA & GRILL LLC      :
224 S. Bridge Street
Elkton, MD  21921                             :          **Jury Trial Requested**
     Serve:  Apostolos Kalaitzoglou
        102 Riverside Dr.      :
        Elkton, MD  21921,
                                                         :
PAT'S SELECT PIZZA & GRILL OF        :
COCKEYSVILLE, MD, LLC                 :
224 South Bridge Street
Elkton, MD  21921                             :
     Serve:  Stavros Kalaitzoglou
        224 South Bridge Street   :
        Elkton, MD  21921,
                                                         :
PAT'S SELECT PIZZA & GRILL OF        :
SEVERN, LLC                                    :
8108 Ritchie Highway
Pasadena, MD  21122                          :

Serve:  Dimitrios Tangalidis
       90 Riverside Drive
       Elkton, MD   21921,         :

PAT'S PIZZA OF NORTH EAST, INC.   :
2305 W. Pulaski Highway
North East, MD   21901            :
     Serve:  Apostolos Kalaitzoglou
       102 Riverside Dr.        :
       Elkton, MD   21921,

                              :
PAT'S PIZZERIA OF ABERDEEN, LLC
220 S. Philadelphia Blvd.         :
Aberdeen, MD   21001
     Serve:  Jay C. Emrey, III      :
       153 E. Main Street
       Elkton, MD   21921,      :

PAT'S PIZZA OF OXFORD, LLC    :
351 N. Third Street
Oxford, PA   19363           :
     Serve: Apostolos Kalaitzoglou
       351 North Third Street    :
       Oxford, PA   19363,

                              :
APOSTOLOS' PIZZERIAS, INC.
224 South Bridge Street        :
Elkton, MD   21921
     Serve: H. Norman Wilson, Jr.   :
       109 Bridge Street
       Elkton, MD  21921,       :

"JOHN DOE" RESTAURANTS,    :

APOSTOLOS KALAITZOGLOU   :
102 Riverside Drive
Elkton, MD   21921,         :

     and                  :

DIMITRIOS TANGALIDIS      :
90 Riverside Drive
Elkton, MD   21921,         :

      Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiffs, Cassondra Casorio-Sahin, Andres Quintana, and Jonathan Thomas, for themselves and on behalf of all others similarly situated, sue Defendants identified in the caption of this Complaint and, in support thereof, make the following allegations based on information and belief and/or which are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## SUMMARY OF THE CASE

1.      Defendants own and operate a chain of restaurants commonly known as Pat's Select Pizza|Grill ("Pat's Select"), as well as other similar restaurants, in locations in Maryland and Pennsylvania.  Specifically, the Pat's Select locations are North East, Elkton, Pasadena and Aberdeen, Maryland and Oxford, Pennsylvania.  Similar restaurants are located elsewhere in Maryland and Pennsylvania.  The non-individual legal entities identified as Defendants in the caption of this pleading are termed herein, collectively, the "Entity Defendants."

2.      On information and belief, the individuals identified as Defendants, Apostolos "Lucky" Kalaitzoglou and Dimitrios Tangalidis, own, control or operate all of the Entity Defendants, jointly or severally and jointly coordinate the restaurant activities of the Entity Defendants.  On further information and belief, Mr. Kalaitzoglou or Mr. Tangalidis is either a shareholder, member, resident agent or officer of each of the Entity Defendants.  Both individual Defendants, for example, were the organizers of Pat's Pizza of Oxford, LLC, the Entity Defendant under which the Oxford, Pennsylvania Pat's Select location operates.  Mr. Kalaitzoglou is the organizer of Defendant Pat's Select Pizza & Grill of Cockeysville, MD, LLC, and its resident agent is Stavros Kalaitzoglou, who is the son of Mr. Kalaitzoglou.  Mr. Kalaitzoglou was the incorporator of Pat's Pizza of North East, Inc., under which the North East Pat's Select location is operated.  Mr. Kalaitzoglou is the resident agent of, for example, the

North East and Oxford locations. Mr. Tangalidis is the resident agent of, for example, the Pasadena location. Mr. Kalaitzoglou and Mr. Tangalidis reside as neighbors on Riverside Drive, in Elkton, Maryland, one of the Pat's Select locations, and, on information and belief, Mr. Kalaitzoglou is the uncle of Mr. Tangalidis. Mr. Kalaitzoglou is identified in several online and published articles as a restauranteur owning and operating Italian and Asian restaurants.

3.      The Entity Defendants, together with Mr. Kalaitzoglou and Mr. Tangalidis, operate as an integrated enterprise. The Pat's Select locations are advertised jointly on the same internet website (www.patsselect.com). On that website and elsewhere, they market the same foods and services under the same logos and trademarks. Several YouTube video advertisements for "Pat's Select," which do not distinguish among any of the locations (including two locations in Delaware and seven locations in New Jersey, the latter of which appear to be owned and controlled by Spiro Karolidis, not Mr. Kalaitzoglou or Mr. Tangalidis) may be accessed through https:www.youtube.com/-playlist?list=PLY0c_s9V3Paq(lbMgGm3CDnR7PUTVGrAA. A similar YouTube video advertisement, also not distinguishing among any of the Pat's Select locations and featuring Mr. Kalaitzoglou's son, Stavros, may be accessed at https://www.youtube.com/watch?v=SCa7KEC2uH8. Other restaurants in the integrated enterprise and owned, controlled or operated by Mr. Kalaitzoglou and Mr. Tangalidis are identified as "Pat's" restaurants.

4.      On information and belief, all delivery drivers at each of the Pat's Select locations were required to obtain and use the same cellphone app for processing credit card charges and tracking mileage.

5.      The Entity Defendants also operate in support of and coordination with each other. Delivery drivers based at the North East location and residing in Maryland have been

periodically tasked to help with deliveries and other needs at the Oxford location.  Because the Oxford location has often been short cooks and drivers, employees from the Elkton and North East locations have often filled in at Oxford.  Sometimes, however, employees from Oxford worked at Aberdeen, North East and Pasadena.  Likewise, supplies are transferred among locations.  For each of the states of Maryland and Pennsylvania, locations in one state support locations in the other two states.  In particular, employees at the Pennsylvania locations have travelled to Maryland to support operations in Maryland.  The Pat's Select locations, other locations of the Entity Defendants, and the individual Defendants operate or reside within a few hours drive of each other.  Mr. Kalaitzoglou and Mr. Tangalidis reside within blocks of each other in Elkton, Maryland.

6.      The North East Pat's Select location was reported in 2017 to have estimated annual revenue of $230,000.  Likewise, the Oxford location's annual revenue, reported in Dun & Bradstreet, was $360,000.  On information and belief, each of the Pat's Select locations operates on approximately the same physical and economic scale.

7.      The integrated enterprise that Mr. Kalaitzoglou and Mr. Tangalidis together own, control or operate has revenues collectively in excess of $500,000 annually.  The individual and Entity Defendants are each and all engaged in the same economic activity, the operation of restaurants, with pizza being a central theme and product.  Through Defendants Kalaitzoglou and Tangalidis, the restaurants are subject to common control and unified operations.  Their common business purpose is the generation of revenue, profits and income through restaurant operation.

8.      On information and belief, Mr. Kalaitzoglou and Mr. Tangalidis together set wage, compensation, work-hour and other policies for the operation of the restaurants in their integrated enterprise.

9.     To its customers, Pat's Select restaurants advertise themselves to be a "family-friendly restaurant" and tout their "fast delivery," "fast casual" atmosphere and "fresh" ingredients.  The locations promise a "dining experience" that "will be enjoyable and unique." For Pat's Select's employees, however, the restaurants present a bleaker scenario, and their management regularly taunts employees with the layered complexity of their organization when there are threats of legal actions for wage violations.  Many employees are foreign immigrants or citizens for whom English is a second language.

10.     The named Plaintiffs are hourly wage employees who have primarily worked either as delivery drivers or in the kitchen staffs at Pat's Select and related Maryland restaurants but were not paid in accordance with and notified of their wage and compensation rights, as required by federal and state laws that exist to protect the rights of such vulnerable workers. Plaintiffs bring this collective action and class action to recover, for themselves and as representatives for all other similarly situated employees, the wages and other damages to which they are entitled under the Fair Labor Standards Act ("FLSA"), applicable state statutes, and the regulations applicable to the federal and state statutes.

## PARTIES

11.     Plaintiff Cassondra Casorio-Sahin is a resident of the State of Maryland.  Ms. Casorio-Sahin was employed doing deliveries and other tasks primarily at the Pat's Select located at 2305 Pulaski Hwy, North East, MD 21901 ("North East Pat's Select").  She last worked there from December 21, 2016, until February 28, 2017.  She was not paid the applicable minimum wage when she performed work that was not subject to tipping by Pat's Select patrons, such as sweeping floors, cleaning pans, folding pizza boxes and painting.  Although she received tips for deliveries, she was not informed by Pat's Select of minimum wage or tip credit

requirements and policy, and, as a result, she also was not paid the applicable minimum wage when she made deliveries.

12.     Nor was Ms. Casorio-Sahin adequately reimbursed for expenses that she personally incurred but that were necessary for the work she did for Pat's Select, expenses such as uniform shirts and car and cellphone use.  For example, in a 4-month period she drove for Pat's Select, from November 2016 to February 2017, Ms. Casorio-Sahin averaged 1,426 miles per month, which, at the federal mileage rates applicable during that period, translates to in excess of $713.00 per month.  She was reimbursed, however, only between $.50 and $1.50 per delivery, depending on the length of the trip (which could include more than one delivery), although trips often exceeded 10 miles per trip and were as much as 25 miles.  Pat's Select payroll records show that she received an average of $196.81 per month for mileage reimbursements during the same period, well short of the estimated $713.00 per month.

13.     Plaintiff Andres Quintana is a resident of the State of Maryland.  Mr. Quintana was employed primarily at the North East Pat's Select on the kitchen staff, initially from March of 2011 to January of 2014.  He worked again at that location from the fall of 2016 to January of 2017.  He most recently began working at the location in December of 2017 and continues to work there, still on the kitchen staff.  He has sometimes also worked for the Pat's Select located at 224 S. Bridge Street, Elkton, MD 21001 ("Elkton Pat's Select").  While at Pat's Select, he regularly worked and continues regularly to work over 60 hours a week but has not been and continues not to be paid time and a half for his overtime hours.

14.     Plaintiff Jonathan Thomas is a resident of the State of Delaware.  Mr. Thomas was employed at the North East Pat's Select doing deliveries and other tasks from November of 2016 to March of 2017.  On occasion he was also employed to do deliveries for the Pat's Select

located at 351 N. Third Street, Oxford, PA 19363 ("Oxford Pat's Select").  Although he received

tips for deliveries, he was not informed by Pat's Select of minimum wage or tip credit

requirements and policy, and, as a result, he also was not paid the applicable minimum wage

when he made deliveries.  His delivery and other work at the Pat's Select North East and Oxford

locations resulted in his working overtime for Pat's Select, for which overtime he was not paid a

lawful wage.

15.     Nor was Mr. Thomas adequately reimbursed for expenses that he personally

incurred but that were necessary for the work he did for Pat's Select, expenses such as uniform

shirts and car and cellphone use.  For example, in a 2-month period he drove for Pat's Select,

from January 2017 to February 2017, Mr. Thomas averaged 1,896 miles per month, which, at the

federal mileage rates applicable during that period, translates to in excess of $948.00 per month.

He was reimbursed, however, only $.75 per delivery, and although trips could include more than

one delivery, they often exceeded 10 miles per trip and were as much as 25 miles.  Pat's Select

payroll records show that he received an average of $275.00 per month for mileage

reimbursements during the same period, well short of the estimated $948.00 per month.

16.     Defendant Apostolos "Lucky" Kalaitzoglou is a resident of the State of Maryland.

On information and belief, Mr. Kalaitzoglou and Defendant Dimitrios Tangalidis own, control or

operate all of the Entity Defendants, jointly or severally.  On further information and belief, Mr.

Kalaitzoglou or Mr. Tangalidis is a shareholder, member, or officer of each of the Entity

Defendants.

17.     Defendant Dimitrios Tangalidis is a resident of the State of Maryland.  On

information and belief, Mr. Tangalidis and Defendant Kalaitzoglou own, control or operate all of

the Entity Defendants, jointly or severally.  On further information and belief, Mr. Kalaitzoglou or Mr. Tangalidis is a shareholder, member, or officer of each of the Entity Defendants.

18.     Entity Defendants Pat's Select Pizza & Grill LLC, Pat's Select Pizza & Grill of Cockeysville, Maryland, LLC, Pat's Select Pizza & Grill of Severn, LLC, Pat's Pizza of North East, Inc., Pat's Pizzeria of Aberdeen, LLC and Apostolos'Pizzerias, Inc. are formed and organized under the laws of Maryland.  Entity Defendant Pat's Pizza of Oxford, LLC is organized under the laws of Pennsylvania.  The specific locations of the "John Doe" Entity Defendants are unknown  at this time.  On information and belief, employees of non-Select locations have been tasked to work at Pat's Select locations.  On further information and belief, each of the Entity Defendants operates Pat's Select restaurant locations and other pizza restaurant locations at which the wrongful and unlawful wage and compensation practices involving employee drivers and kitchen staff and described in this Complaint have occurred and continue to occur.

## JURISDICTION AND VENUE

19.     This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S. C. §§ 1331 and 1337 and 29 U.S.C. § 216 (b), because Plaintiffs' federal claims arise under the FLSA.

20.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

21.     All Defendants are subject to personal jurisdiction in Maryland because each either is domiciled in Maryland, is organized under the laws of Maryland, transacts a significant

amount of business in Maryland from which the defendant derives substantial income, regularly performs work and services in Maryland, and/or has caused tortious injury outside of Maryland by acts or omissions outside Maryland while regularly engaging in persistent courses of conduct in Maryland.

22.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) - (3) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because all Defendants are subject to personal jurisdiction in Maryland.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

23.     Defendants presently operate at least five Pat's Select locations in Maryland (Aberdeen, Elkton, Pasadena and North East) and Pennsylvania (Oxford).  Plaintiffs and other similarly situated employees work for Defendants at those locations and other locations of Defendants' enterprise.

24.     Defendants have adopted, applied, enforced and undertaken practices and procedures to evade their legal obligation to pay Pat's Select and other employees, such as Plaintiffs and other similarly situated employees, in compliance with federal and state law and to deprive Plaintiffs and similarly situated employees of the wages and other protections mandated by the FLSA and related rules and regulations and by relevant state statutes and regulations.

**1.  Defendants Have Failed to Pay Their Kitchen Staff the Wages to Which They Are Entitled.**

25.     Mr. Quintana is a kitchen staff cook at the North East Pat's Select location and is a class representative for all kitchen staff similarly situated.  Defendants employ numerous kitchen staff at each location, all of whom are engaged in commerce on behalf of Defendants' enterprise.  Defendants, however, fail to pay their kitchen staff for the hours worked, including overtime, or otherwise as required by law.

26.    At all times relevant hereto, and throughout the duration of his employment at Pat's Select North East, Mr. Quintana, and all employees of Defendants enterprise similarly situated to him, were entitled to the protections and benefits mandated by the FLSA, 29 U.S.C. § 207(a).

27.    At no time during his employment at Pat's Select North East was Mr. Quintana, or any other of employee similarly situated to him, exempt from the payment of overtime wages. In relation to Mr. Quintana, and each of the other similarly-situated employees, Defendants have failed to meet the requirements for any of the exemptions from application of the wage or overtime compensation requirements of the FLSA.  As such, Mr. Quintana, and each of the other similarly situated employees of Defendants' enterprise, was a non-exempt, hourly employee of Defendants at all times relevant hereto.

28.    Throughout his employment at Pat's Select North East, Mr. Quintana, and other employees of Defendants similarly situated to him, regularly and consistently worked for more than 40 hours per work week.  Defendants, however, never paid Mr. Quintana, or any of the other employees similarly situated to him, for any overtime hours worked at a premium overtime wage rate.

29.    Mr. Quintana routinely worked 12 hour days and often over 60 hours per week during his employment.  Nonetheless, Mr. Quintana was instructed by his supervisors always to "clock in" for no more than a 10-hour day, regardless of how many hours he actually worked. For each seven-day pay period, Mr. Quintana was on the recorded payroll for only single 10-hour days.  In addition, Mr. Quintana received, in addition to a paycheck, an envelope with typically $580 in cash for each pay period that he worked.

30.     Defendants paid all of the similarly-situated kitchen staff in a similar fashion. Each pay period, managers gathered all kitchen staff and tendered envelopes containing amounts of cash.  The cash contained in the envelopes, together with any paychecks received, did not adequately compensate them, as required by law, for all of the hours that those employees worked; nor, upon information and belief, were all hours recorded on the payroll.  Defendants have engaged in this practice at all times relevant to this action.

31.     On occasion, the manager or supervisor on duty at Pat's Select North East, for example, "clocked out" Mr. Quintana and similarly situated employees from their shifts, despite the fact that those employees were instructed to, and did, continue to work for significant periods of time after clocked hours.  On other occasions, Mr. Quintana and employees similarly situated to him have been told to come in early to perform tasks unrelated to their kitchen duties.  For example, on one occasion, Mr. Quintana was instructed to come to work at 6 AM to clean the roof of the Pat's Select North East building.  On other occasions, he was instructed to stay after concluding his kitchen duties to perform other unrelated tasks.  Pat's Select North East did not compensate Mr. Quintana for that work; nor have Defendants done so for other similarly situated employees from whom it demanded similar off-the-clock work.

32.     Timesheets and payroll records are maintained in the exclusive control of Defendants.  Those timesheets and payroll records are, upon information and belief, consistent with Plaintiffs' allegations and will demonstrate that Defendants did not record and account for all of the hours worked by Mr. Quintana and similarly situated employees and did not pay them a standard minimum wage for all of the hours that they actually worked or, when required, a premium wage rate for overtime hours worked.  As such, Defendants violated their statutory duty

under the FLSA to keep and maintain accurate records of Plaintiffs' and similarly situated employees' hours worked.

### 2. Defendants Have Failed to Pay Their Delivery Drivers the Wages and Other Compensation to Which They Are Entitled.

33.    Ms. Casorio-Sahin and Mr. Thomas were delivery drivers at the North East Pat's Select location and are class representatives for all delivery drivers of Defendants' enterprise similarly situated to them.  Mr. Thomas also served as a delivery driver for the Oxford Pat's Select location in Pennsylvania.

34.    Defendants employ numerous delivery drivers at each restaurant location, all of whom are engaged in commerce on behalf of Defendants' enterprise.  Defendants, however, failed and continue to fail to pay their delivery drivers for their hours worked or at wage rates required by law.

35.    At all times relevant hereto, and throughout the duration of their employment by Defendants, Ms. Casorio-Sahin and Mr. Thomas, along with all similarly situated employees of Defendants' enterprise, were entitled to the protections and benefits mandated by the FLSA, 29 U.S.C. § 207(a).

36.    At no time during their employment by Defendants were Ms. Casorio-Sahin, Mr. Thomas or any other of the similarly situated employees exempt from the payment of overtime wages.  In relation to Ms. Casorio-Sahin, Mr. Thomas and each of the other similarly situated employees, Defendants have failed to meet the requirements for any of the exemptions from application of the wages or overtime compensation requirements of the FLSA.  As such, Ms. Casorio-Sahin, Mr. Thomas and each of the other similarly-situated employees were non-exempt, hourly employees at all times relevant hereto.

37.    Defendants have violated the FLSA and failed to pay Ms. Casorio-Sahin, Mr. Thomas and all other similarly situated employees as required by the FLSA in several respects.

38.    The FLSA and applicable state laws require Defendants to pay their employees a standard minimum wage for all hours worked.  Although such laws permit an employer to offset the minimum wage through tips earned by the employee, known as a "tip credit," an employer must meet the requirements of those laws in applying that practice and, in particular, basing part of an employee's compensation on tips.

39.    Among other things, the hourly wage and the employees' tips, taken together, must be at least equivalent to the standard minimum wage for all hours worked in a week. Furthermore, the FLSA requires that an employer who wishes to claim tip credits toward the wages of its tipped employees must inform its tipped employees in advance of the employer's "use of the tip credit," by providing the employee with (i) notice of the base cash wage and the amount of the tip credit, including notice that the tip credit amount "may not exceed the value of the tips actually received by the employee," and with (ii) notice "that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement." 29 C.F.R. § 531.59(b).  "[T]he tip credit shall not apply to any employee who has not been informed of these requirements." *Id*.  Additionally, when tipped employees perform non-tipped work, they must receive standard minimum wage rather than tip credit where either: (i) the non-tipped duties are unrelated to their tipped duties or (ii) the non-tipped duties are related to their job as a delivery driver but a substantial amount of time (over 20%) is spent in related but non-tip generating duties.

40.    Defendants failed to provide to Ms. Casorio-Sahin, Mr. Thomas and similarly situated employees proper notice, as required by applicable laws and regulations, that a tip credit

was being applied to satisfy the required minimum wage.  Defendants did not inform the delivery

drivers:  (i) of their hourly cash wage, (ii) of the amount of tip credit that they were claiming,

together with the hourly wage, to meet the minimum hourly wage requirement, (iii) that the tip

credit amount may not exceed the value of the tips actually received by the employee, (iv) that

all tips received must be retained by the employee, and (v) that the tip credit shall not apply to

any employee who has not been informed of these requirements.

41.     Defendants also did not pay Ms. Casorio-Sahin, Mr. Thomas and similarly-

situated employees the standard minimum wage for all of their hours worked, even if tips

received could lawfully be included in that wage (which they cannot because, as alleged above,

Defendants did not properly inform employees of their "tip credit" practices).  Defendants

regularly "clocked out" Ms. Casorio-Sahin and similarly situated employees before they actually

completed their work.  For example, even after clocking out Ms. Casorio-Sahin and similarly-

situated employees, Defendants required Ms. Casorio-Sahin  and similarly situated employees to

remain at the store and clean and/or perform other tasks, such as stocking shelves or folding

boxes, for as long as 15 to 20 minutes after each shift.  Likewise, during idle time, Ms. Casorio-

Sahin, Mr. Thomas and similarly situated employees were asked to perform un-tipped and non-

delivery related work, for which they were paid Defendants' tipped-reduced hourly wage, rather

than the minimum wage.  Defendants did not pay Ms. Casorio-Sahin or the similarly-situated

employees the applicable minimum wage when additional but unrecorded time they worked is

included and when un-tipped and non-delivery related work was performed.

42.     The additional work that Defendants required Ms. Casorio-Sahin, Mr. Thomas

and similarly situated employees to perform, in addition to their work as delivery drivers, was

work unrelated to their occupation of delivering food for Defendants.  Defendants were not

permitted to apply a tip credit for such non-tipped work (even if Defendants had properly

informed their employees of their tip credit practices, which they did not).  As such, the wages

that Defendants paid to Ms. Casorio-Sahin, Mr. Thomas and other similarly situated employees

for time other than time lawfully subject to being tip-credited, failed to meet the standard

minimum wage required by applicable laws.

      43.    Even if a tip credit could lawfully have been applied in the wages paid to Ms.

Casorio-Sahin, Mr. Thomas  and similarly situated employees (which it may not lawfully be),

Defendants failed to pay to Ms. Casorio-Sahin, Mr. Thomas and similarly situated employees the

standard minimum wage required by applicable laws, because Defendants, as a pattern and

practice, regularly "clocked out" such employees before the completion of their work and

required them to continue working significant amounts of time that was neither recorded nor

compensated.

      44.    Timesheets and payroll records are maintained in the exclusive control of

Defendants.  Those timesheets and payroll records are, upon information and belief, consistent

with Plaintiffs' allegations and, upon further information and belief, will demonstrate that

Defendants did not record and account for all of the hours worked by Ms. Casorio-Sahin, Mr.

Thomas and similarly situated employees and did not pay them a standard minimum wage for all

of the hours that they actually worked.  As such, Defendants violated their statutory duty under

the FLSA to keep and maintain accurate records of Plaintiffs' hours worked.

      45.    Mr. Thomas, in addition to doing deliveries for the Pat's Select North East

location, also did deliveries for the Pat's Select Oxford location, which was not recorded and for

which he was paid in cash.  These additional deliveries resulted in Mr. Thomas and delivery

drivers working elsewhere in Defendants' enterprise similarly situated to him working overtime, for which overtime they were not paid a premium wage.

46.    Federal law further provides that "the wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."  29 C.F.R. § 531.35.  Where an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, the payment by the employer of such sums to compensate the employee for such expenditure may not lawfully be included in the employee's regular wages as compensation necessary to meet the standard minimum wage required by applicable laws.  Therefore, employers such as Defendants must otherwise reimburse employees, such as Ms. Casorio-Sahin, Mr. Thomas and other similarly situated employees, for expenses that they incur as part of their work, so that their hourly wages do not fall below the standard minimum wage required by law when such expenses are taken into account.

47.    In compensating employees for expenses incurred in the performance of their work on the behalf of their employers, employers such as Defendants are required to "reasonably approximate" the expenses incurred by such employees and provide reimbursement to them so that the employees' wages, absent such reimbursement, do not fall below the standard minimum wage required by law.

48.    Defendants require their delivery driver employees, such as Ms. Casorio-Sahin, Mr. Thomas and other similarly situated employees, to use their own automobiles in the performance of their work making deliveries for Defendants' enterprise.  Although Defendants pay to their delivery driver employees between $.50 of each $1.50 per delivery as a "mileage

reimbursement," that payment, as shown by the comparison herein of actual reimbursements to estimated actual expenses for Ms. Casorio-Sahin and Mr. Thomas, does not constitute a reasonably approximated reimbursement of the vehicle expenses incurred by Ms. Casorio-Sahin, Ms. Thomas and other similarly situated delivery drivers.

49.     Furthermore, Defendants also effectively require their delivery drivers to use their personal cellular phones to perform work for their enterprise.  Yet, Defendants provide no reimbursement whatsoever to Ms. Casorio-Sahin, Mr. Thomas and other similarly situated delivery drivers for the use of their cellular phones.  Specifically, delivery drivers such as Ms. Casorio-Sahin, Mr. Thomas and other similarly situated employees must use their cellular phones, among other things, to navigate to their destinations, to track mileage to their destinations on an app whose use Defendants require (although that app does not, upon information and belief, track all of the mileage incurred in the course of all deliveries that are made) and to communicate with customers.  Defendants actually provide to their delivery customers the private cellular telephone numbers of Ms. Casorio-Sahin, Mr. Thomas and other similarly-situated delivery drivers who are assigned to make deliveries to them.  This practice both invades the privacy of such drivers and poses a potential danger to them.  At the least, however, Defendants' failure to reimburse as Ms. Casorio-Sahin, Mr. Thomas and other similarly situated delivery drivers for the use of their cellular phones as part of their work is itself unlawful.

50.     Defendants also require Ms. Casorio-Sahin, Mr. Thomas and other similarly situated delivery drivers to wear uniform shirts or other clothing.  Defendants pay for each driver's first shirt but not any other shirts then or thereafter required on account of hygiene, wear and tear or the like.  Defendants do not reimburse the delivery drivers, such as Ms. Casorio-

Sahin, Mr. Thomas and other similarly situated delivery drivers, for the expenses that they incur to purchase and dry clean the uniform shirts of Defendants' enterprise.

51.     The wage and expense reimbursement violations alleged herein are continuing in nature.

## COUNT I
### (Violation of the Fair Labor Standards Act --
### Minimum Wage Violations)

52.     Plaintiffs adopt and incorporate herein all of the allegations set forth in the preceding paragraphs as if the same were set forth and re-alleged herein.

53.     At all times relevant hereto, Defendants knew that the FLSA applied to Plaintiffs, along with all similarly situated employees, as non-exempt employees and that they had a statutory duty not only to keep accurate records of Plaintiffs' hours worked but also to pay Plaintiffs and all similarly situated employees a standard minimum wage in accordance with federal law for all hours worked.

54.     Defendants failed to pay to Plaintiffs or any employees similarly situated to them the standard minimum wage in accordance with federal law for all of the hours that those employees worked.

55.     At all times relevant hereto, and as described more fully above, Defendants adopted, applied, enforced and undertook practices and procedures to evade their legal obligation to pay the standard minimum wage required by and in accordance with federal law and to deprive Plaintiffs and other similarly situated employees of that standard minimum wage that they were required to pay to them under federal law, as set forth in the FLSA and related rules and regulations.

56.     Defendants evaded their obligations to pay the standard minimum wage required by and in accordance with federal law by, among other things:  (i) requiring Mr. Quintana and all other similarly situated kitchen staff employees to understate the number of hours that they actually worked; (ii) failing to record all hours actually worked by Mr. Quintana and other similarly situated kitchen staff employees; (iii) failing to pay Mr. Quintana and all other similarly situated kitchen staff employees for the actual hours that they worked; (iv) including a "tip credit" as part of the wages paid to Ms. Casorio-Sahin, Mr. Thomas  and other similarly situated delivery driver employees when Defendants were not lawfully permitted to do so; (v) failing to record all hours actually worked by Ms.  Casorio-Sahin, Mr. Thomas and other similarly situated employees by, among other things, regularly "clocking out" such employees before the completion of their work and requiring them to continue working significant amounts of time that was neither recorded nor compensated; (vi) failing to reimburse Ms. Casorio-Sahin, Mr. Thomas and similarly situated employees for expenses that they incurred as a part of their work, thereby causing their hourly wages to fall below the standard minimum wage required by federal law when such unreimbursed expenses are taken into account; (vii ) requiring all Plaintiffs and other similarly situated employees to perform work, whether related or unrelated to their primary duties, for which the time was not recorded and compensated or compensated at less than the standard minimum wage; and (viii ) by otherwise acting in the manner, and pursuing the patterns and practices, described more fully above.

57.     Defendants' conduct, as described above, and the patterns and practices in which they have engaged, have been willful and intentional and undertaken for the unlawful purpose of avoiding the payment of the standard minimum wage required by federal law to Plaintiffs and other similarly situated employees.

58.     Defendants' conduct constitutes willful violations of the FLSA, entitling Plaintiffs to all relief afforded under the FLSA.

59.     Plaintiffs and all other similarly situated employees are entitled to, and Defendants are liable for, compensation due to Plaintiffs and all other similarly situated employees for any and all hours that they worked and were not paid at the standard minimum wage required by federal law.

60.     Under the provisions of the FLSA, 29 U.S.C. § 216, Defendants are liable to Plaintiffs and all other similarly situated employees for liquidated damages in an amount equal to the unpaid compensation due to Plaintiffs and all other similarly situated employees for any and all hours that they worked and were not paid the standard minimum wage required by and in accordance with federal law for the three years immediately preceding the filing of this action, declaratory and injunctive relief, and reasonable attorneys' fees and expenses of litigation.

## COUNT II
### (Violation of the Fair Labor Standards Act --
### Overtime Wage Violations)

61.     Plaintiffs adopt and incorporate herein all of the allegations set forth in the preceding paragraphs as if the same were set forth and re-alleged herein.

62.     Defendants knew that the FLSA applied to Plaintiffs, along with all other similarly situated employees, as non-exempt employees, and that Defendants had a statutory duty not only to keep accurate records of Plaintiffs' hours worked but also to pay Plaintiffs and all other similarly situated employees overtime wages for hours worked over 40 hours in a given workweek.

63.     At all times relevant hereto, Defendants knew that they were legally obligated to compensate Plaintiffs and all other similarly situated employees at a rate of 1 ½ times their

21

regular hourly rate (or at least the standard minimum hourly wage required by federal law) for each hour worked in excess of 40 hours in any given workweek.  Nonetheless, Defendants never compensated Plaintiffs or any of similarly-situated employees for overtime hours actually worked -- at either their "regular hourly rate" or at a premium overtime wage rate, as required by law.

64.    At all times relevant hereto, and as described more fully above, Defendants adopted, applied, enforced and undertook practices and procedures to evade their legal obligation to pay overtime wages required by federal law and to deprive Plaintiffs and other similarly situated employees of the overtime wage that they were required to pay under federal law, as set forth in the FLSA and related rules and regulations.

65.    Defendants evaded their obligations to pay overtime under the FLSA by, among other things:  (i) requiring Mr. Quintana and all other similarly situated kitchen staff employees to understate the number of hours that they actually worked; (ii) failing to record all hours actually worked by Mr. Quintana and other similarly situated kitchen staff employees; (iii) failing to pay Mr. Quintana and all other similarly situated kitchen staff employees for the actual hours that they worked; (iv) failing to record all hours actually worked by Ms. Casorio-Sahin, Mr. Thomas and other similarly situated employees by, among other things, regularly "clocking out" such employees before the completion of their work and requiring them to continue working significant amounts of time that was neither recorded nor compensated; (v) requiring all Plaintiffs and other similarly situated employees to perform work, whether related or unrelated to their primary duties, for which the time was not recorded and compensated; (vi) paying all Plaintiffs and other similarly situated employees less than 1 ½ times the minimum standard or

other applicable hourly wage for overtime hours worked; and (vii ) by otherwise acting in the manner, and pursuing the patterns and practices, described more fully above.

66.      Mr. Quintana's "regular rate" of pay for all times relevant to this action was $10.50 per hour.

67.      Ms. Casorio-Sahin's "regular rate" of pay for all times relevant to this action was $8.75 per hour.

68.      Mr. Thomas's "regular rate" of pay for all times relevant to this action was $6.55 per hour.

69.      Defendants' conduct, as described above, and the patterns and practices in which they have engaged has been willful and intentional and undertaken for the unlawful purpose of avoiding the payment of the required overtime wages required by federal law to Plaintiffs and other similarly situated employees.

70.      Defendants' conduct constitutes willful violations of the FLSA, entitling Plaintiffs to all relief afforded under the FLSA.

71.      Plaintiffs and all other similarly situated employees are entitled to, and Defendants are liable for, compensation due to Plaintiffs and all other similarly situated employees for overtime wages at the rate of 1 ½ times their regular hourly rate (of at least the standard minimum hourly wage required by federal law) for each hour worked in excess of 40 hours in any given workweek.

72.      Under the provisions of the FLSA, 29 U.S.C. § 216, Defendants are liable to Plaintiffs and all other similarly situated employees for liquidated damages in an amount equal to the unpaid compensation due to Plaintiffs and all other similarly situated employees for overtime wages at the rate of 1 ½ times their regular hourly rate (or at least the standard minimum hourly

wage required by federal law) for each hour worked in excess of 40 hours in any given workweek for the three years immediately preceding the filing of this action, declaratory and injunctive relief, and reasonable attorneys' fees and expenses of litigation.

**COUNT III**
**(Violation of the Fair Labor Standards Act --**
**Failure to Pay Expense Reimbursement)**

73.     Plaintiffs adopt and incorporate herein all of the allegations set forth in the preceding paragraphs as if the same were set forth and re-alleged herein.

74.     Defendants knew that the FLSA applied to Ms. Casorio-Sahin and Mr. Thomas, along with all similarly-situated employees, as non-exempt employees, and that they had a legal duty to reimburse Ms. Casorio-Sahin, Mr. Thomas, and all other similarly situated employees for the expenses that they incurred in the furtherance of Defendants' business interests and, where Defendants did not keep detailed contemporaneous records of such expenses, to reasonably approximate such expenses and pay such amounts to its employees.

75.     At all times relevant hereto, Defendants knew that they were legally obligated to reimburse Ms. Casorio-Sahin, Mr. Thomas and all other similarly situated employees for the expenses that they incurred in the furtherance of Defendants' business interests and, where Pat's Select did not keep detailed contemporaneous records of such expenses, to reasonably approximate such expenses and pay such amounts to its employees.

76.     Ms. Casorio-Sahin, Mr. Thomas and all other similarly situated employees regularly incurred expenses in the furtherance of Defendants' business interests.  Ms. Casorio-Sahin, Mr. Thomas and all other similarly situated employees incurred such expenses solely by reason of action taken for the convenience and needs of Defendants.

77.    Defendants did not reimburse Ms. Casorio-Sahin, Mr. Thomas or any of the other similarly situated employees for the actual expenses that they incurred in the furtherance of Defendants' business interests and solely by reason of action taken for the convenience and needs of Defendants.  Nor did Defendants reasonably approximate such expenses incurred by Ms. Casorio-Sahin, Mr. Thomas or any other similarly situated employees and pay such amounts to them.

78.    At all times relevant hereto, and as described more fully above, Defendants adopted, applied, enforced and undertook practices and procedures to evade their legal obligation to reimburse Ms. Casorio-Sahin, Mr. Thomas and all other similarly situated employees for the expenses that they incurred in the furtherance of Defendants' business interests and solely by reason of action taken for the convenience and needs of Defendants, as required by the FLSA and related rules and regulations.

79.    Defendants evaded their obligation to reimburse Ms. Casorio-Sahin and all other similarly situated employees for the expenses that they incurred in the furtherance of Defendants' business interests and solely by reason of action taken for the convenience and needs of Defendants by, among other things:  (i) requiring Ms. Casorio-Sahin, Mr. Thomas and all other similarly situated employees to utilize their personal vehicles and incur gasoline and other vehicle expenses in the furtherance of Defendants' business interests and solely by reason of action taken for the convenience and needs of Defendants, yet failing to provide to Ms. Casorio-Sahin, Mr. Thomas and other similarly situated employees reimbursement for those expenses actually incurred or a reasonable approximation of such expenses; (ii) requiring Ms. Casorio-Sahin, Mr. Thomas and all other similarly situated employees to utilize their cellular phones in the furtherance of Defendants' business interests and solely by reason of action taken

for the convenience and needs of Defendants, yet failing to provide to Ms. Casorio-Sahin, Mr.
Thomas and other similarly situated employees reimbursement for those expenses actually
incurred or a reasonable approximation of such expenses; (iii) requiring Ms. Casorio-Sahin, Mr.
Thomas and all similarly situated employees to purchase and dry clean, at their own expense,
shirts with the Pat's logo or other logos to be worn in the furtherance of Defendants' business
interests and solely by reason of action taken for the convenience and needs of Defendants, yet
failing to provide to  Ms. Casorio-Sahin, Mr. Thomas  and other similarly situated employees
reimbursement for those expenses actually incurred or a reasonable approximation of such
expenses; and  (iv) by otherwise acting in the manner, and pursuing the patterns and practices,
described more fully above.

80. Defendants' conduct, as described above, and the patterns and practices in which
they have engaged, has been willful and intentional, and undertaken for the unlawful purpose of
avoiding making reimbursements for the expenses described above and required by federal law
to Ms. Casorio-Sahin, Mr. Thomas and other similarly situated employees.

81. Defendants' conduct constitutes willful violations of the FLSA, entitling Plaintiffs
to all relief afforded under the FLSA.

82. Ms. Casorio-Sahin, Mr. Thomas and all other similarly situated employees are
entitled to, and Defendants are liable for, compensation due to Ms. Casorio-Sahin, Mr. Thomas
and all other similarly situated employees for reimbursements for the expenses described above,
as required by federal law.

83. Under the provisions of the FLSA, 29 U.S.C. § 216, Defendants are liable to
Plaintiffs and all other similarly situated employees for liquidated damages in an amount equal to
the unreimbursed expenses described above that are due to Ms. Casorio-Sahin, Mr. Thomas and

all other similarly situated employees for the three years immediately preceding the filing of this action, declaratory and injunctive relief, and reasonable attorneys' fees and expenses of litigation.

## COUNT IV
### (Violation of Maryland Wage and Hour Law)

84.    Plaintiffs adopt and incorporate herein all of the allegations set forth in the preceding paragraphs as if the same were set forth and re-alleged herein.

85.    The Maryland Wage and Hour Law, codified at Md. Code Ann., Labor & Emp. § 3-401 *et seq*., is the "state parallel" to the FLSA.  A well-pleaded claim under the FLSA is sufficient to sustain a claim under the Maryland Wage and Hour Law.

86.    Defendants violated plaintiffs' rights under the FLSA in the manners set forth above.  Those violations constitute violations under the Maryland Wage and Hour Law, as well.

87.    Under the provisions of the Maryland Wage and Hour Law, Defendants are liable to Plaintiffs and all other similarly situated employees who suffered violations of the Maryland law for damages and liquidated damages for the three years immediately preceding the filing of this action, treble damages, declaratory and injunctive relief, and reasonable attorneys' fees and expenses of litigation.

## COUNT V
### (Violation of Maryland Wage Payment and Collection Law)

88.    Plaintiffs adopt and incorporate herein all of the allegations set forth in the preceding paragraphs as if the same were set forth and re-alleged herein.

89.    As specified herein, Defendants have failed to pay Plaintiffs and all similarly situated employees wages, as defined in Md. Code Ann., Labor & Emp. § 3-501, including overtime wages, and as required under Section 3-502.

90.     Defendants' failure to pay wages has not been on account of any bona fide dispute.

91.     Under the provisions of the Maryland Wage Payment and Collection Law, codified at Md. Code Ann., Labor & Emp. § 3-501 *et seq.*, Defendants are liable to Plaintiffs and all other similarly situated employees who suffered violations of the Maryland law for damages for the three years immediately preceding the filing of this action, treble damages, declaratory and injunctive relief, and reasonable attorneys' fees and expenses of litigation.

**COUNT VI**
**(Violation of Pennsylvania Minimum Wage Act)**

92.     Plaintiffs adopt and incorporate herein all of the allegations set forth in the preceding paragraphs as if the same were set forth and re-alleged herein.

93.     The Pennsylvania Minimum Wage Act, codified at Pa. Cons. Stat. §§ 333.101 *et seq.*, like the FLSA, require the payment of a minimum wage, including overtime and the reimbursement of expenses incurred by an employee on behalf of and for the needs of an employer.

94.     As specified herein, Defendants have failed to pay Mr. Thomas and all other similarly situated employees minimum wages, as required by the Pennsylvania Minimum Wage Act.

95.     Defendants' failure to pay minimum wages has been without lawful justification.

96.     Pursuant to Section 333.113 of the Act, Mr. Thomas and similarly situated employees of Defendants may recover the full amount of wages they have not been paid, together with costs and reasonable attorney's fees.

## COUNT VII
### (Violation of Pennsylvania Wage Payment and Collection Law)

97.     Plaintiffs adopt and incorporate herein all of the allegations set forth in the preceding paragraphs as if the same were set forth and re-alleged herein.

98.     The Pennsylvania Wage Payment and Collection Law, codified at Pa. Cons. Stat. §§ 260.1 *et seq*., like the FLSA, provide for a civil action to recover unpaid wages.

99.      As specified herein, Defendants have failed to pay Mr. Thomas and all other similarly situated employees wages, as required by law.

100.    Defendants' failure to pay wages has been without lawful justification, including any good faith contest or dispute of any wage.

101.    Pursuant to Sections 260.9a and 260.10 of the Law, Mr. Thomas and other similarly situated employees of Defendants may recover the full amount of wages they have not been paid, liquidated damages and costs for reasonable attorneys' fees of any nature.

## CLASS ACTION AVERMENTS

102.    Plaintiffs adopt and incorporate herein all of the allegations set forth in the preceding paragraphs as if the same were set forth and re-alleged herein.

103.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this class action and seek certification of the claims and certain issues in this action on behalf of two classes defined as:

A.  All persons employed at any and all times within three years prior to the filing of this action and thereafter as delivery drivers by one or more of the Defendant Entities in the integrated enterprise alleged in this action ("Class A").

B. All persons employed at any and all times within three years prior to the filing

of this action and thereafter as kitchen staff by one or more of the Defendant

Entities in the integrated enterprise alleged in this action ("Class B").

Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery

indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

104.    Defendants' practices and omissions were and are being applied uniformly to all

members of each Class, including any subclass arising out of state statutory claims alleged

herein, so that the questions of law and fact are common to all members of each Class and any

subclass.

105.    All members of each Class and any subclass were and are similarly affected by

those wage practice violations of Defendants to which any member of the Classes were

subjected, and the relief sought herein is for the benefit of Plaintiff s and members of each Class

and any subclass.

106.    Based on weekly staffing schedules provided to Plaintiffs and a high rate of

turnover for the types of work performed by the members of each Class, it is apparent that the

number of employees in Class A is considerably in excess of 150 individuals and that the number

of employees in Class B is considerably in excess of 100 individuals.

107.    Questions of law and fact common to the Classes and any subclass exist that

predominate over questions affecting only individual members.  In particular, the only questions

differing from member to member are not questions of law but questions of fact typical in any

wage class action, concerning, in particular, the number of hours worked, wage rates, mileage,

cellphone charges, and dry cleaning charges.

108.    The claims asserted by Plaintiffs in this action are typical of the claims of the

members of each Class and any subclass, as the claims arise from the same course and pattern of

conduct by Defendants, and the relief sought within each Class and any subclass, monetary damages as to each class member and injunctive and declaratory relief applicable in the same terms to all Defendants, is common to the members of each Class.

109.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Plaintiff Classes and any subclass.

110.    Plaintiffs have retained counsel competent and experienced in both employment and class action litigation.

111.    Certification of this class action is appropriate under Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the Classes and any subclass predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

112.    Absent a class action, it would be highly unlikely that the representative Plaintiffs or any other members of the Classes or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits will very likely exceed expected recovery.

113.    Certification also is appropriate because Defendants acted and are continuing to act on grounds generally applicable to the Classes and any subclass, thereby making appropriate the relief sought on behalf of the Classes and any subclass as respective wholes. Further, given the large number of affected employees of the Defendants, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

114.    A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

115.    The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Respectfully Submitted,

RIFKIN WEINER LIVINGSTON LLC

/s/
_____
Joyce E. Smithey, Esq. (Bar No. 27531)
225 Duke of Gloucester Street
Annapolis, Maryland 21401
410-269-5066 (Phone)
410- 269-1235 (Fax)
jsmithey@rwllaw.com

/s/
_____
Alan B. Sternstein, Esq. (Bar No. 04507)
7979 Old Georgetown Road, Fourth Floor
Bethesda, Maryland 20814
301-951-0150 (Phone)
301-951-0172 (Fax)
asternstein@rwllaw.com

Date: March 23, 2018